UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| RAE MILLER et al., <br><br> Plaintiffs, <br><br> v. <br><br> KROGER LIMITED PARTNERSHIP I et al., <br><br> Defendants. | Case No. 2:24-cv-00060 <br><br> Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

### MEMORANDUM ORDER

Plaintiffs Rae Miller and Gary Miller (the Millers) have filed a motion for leave to amend their complaint under Federal Rule of Civil Procedure 15(a)(2). (Doc. No. 12.) Defendants Kroger Limited Partnership I (Kroger) and PepsiCo Beverage Sales, LLC (PepsiCo) oppose the Millers' motion for leave to amend in part. (Doc. No. 13).

For the reasons that follow, the Millers' motion for leave to amend will be granted in part and denied in part.

**I.      Relevant Background**

The Millers were shopping at a Kroger store in Crossville, Tennessee, on or about December 10, 2022, when Rae Miller tripped over an empty shipping pallet, fell, and sustained injuries. (Doc. No. 1-1.) The Millers allege that a PepsiCo employee left the pallet on the floor of a store aisle after stocking shelves and that other merchandise obscured the pallet from the Millers' view. (*Id.*) The Millers initiated this action on December 6, 2023, by filing a complaint for monetary damages in the Circuit Court of Cumberland County, Tennessee, asserting negligence claims against Kroger, PepsiCo, and related entities. (*Id.*) Kroger and PepsiCo answered the

Millers' complaint on April 22, 2024. (*Id.*) At the parties' request, the Cumberland County Circuit Court entered an agreed order dismissing the related entities as defendants on August 9, 2024. (*Id.*)

Kroger and PepsiCo removed the action to this Court on August 26, 2024. (Doc. No. 1.) The Court entered an initial case management order setting April 1, 2025, as the deadline for filing motions to amend the pleadings, June 1, 2025, as the deadline for completing discovery, and November 3, 2025, as the deadline for filing dispositive motions. (Doc. No. 8.)

On March 31, 2025, the Millers filed a motion for leave to file an amended complaint under Rule 15(a)(2) (Doc. No. 12) and attached a proposed amended complaint (Doc. No. 12-1). The proposed amendments allege violations of the International Property Code and International Fire Code adopted by the City of Crossville, remove the related entities initially named as defendants, and seek additional damages for Rae Miller's loss of future earnings and loss of earning capacity. (Doc. No. 12.) Kroger and PepsiCo do not oppose the Millers' proposed amendment to remove the already dismissed related entity defendants but do oppose the proposed amended causes of action and requests for damages, arguing that these proposed amendments are unduly delayed, prejudicial, and futile. (Doc. No. 13.) The Millers did not file an optional reply.

II.     **Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) provides that district courts should "freely" grant a motion for leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "mandate" flows from the principle that a plaintiff "ought to be afforded an opportunity to test [their] claim on the merits" where "the underlying facts or circumstances relied upon . . . may be a proper subject of relief . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—

2

the leave sought should, as the rules require, be 'freely given.'" *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003) (quoting *Foman*, 371 U.S. at 182). A proposed amendment is futile when it would not survive a motion to dismiss under Rule 12(b)(6). *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "A district court's order denying a Rule 15(a) motion to amend is usually reviewed for an abuse of discretion." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Denials on the basis of futility are reviewed *de novo*. *Id.* Regardless, Sixth Circuit case law "'manifests "liberality in allowing amendments to a complaint."'" *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)).

**III.     Analysis**

Kroger and PepsiCo do not oppose the Millers' proposed amendment to remove the related entity defendants that have already been dismissed from the action. (Doc. No. 13.) However, Kroger and PepsiCo argue that the Court should deny the Millers' request for leave to amend their asserted causes of action and damages on the bases of delay, prejudice, and futility. (*Id.*)

**A.     Undue Delay and Prejudice**

Kroger and PepsiCo acknowledge that the Millers "filed their motion to amend on the day before the deadline set forth in the initial case management order, which allows an amendment until April 1, 2025." (*Id.* at PageID# 116.) But they argue that "the timing of the proposed amendment nevertheless substantially prejudices [Kroger and PepsiCo] when considered in the context of this action and the other deadlines set forth in the scheduling order[.]" (*Id.*) Specifically, Kroger and PepsiCo argue that, while the deadline for concluding discovery is not until June 1, 2025, the deadline for serving written discovery passed on December 15, 2024. (*Id.*) Kroger and PepsiCo therefore assert that, "[i]f the amendment were to be allowed, [Kroger and PepsiCo]

3

would not have an opportunity to serve written discovery as to [the Millers'] proposed newly asserted causes of actions and damages categories." (*Id.*) They further argue that they served the Millers with written discovery "on February 24, 2024[,] that requested information regarding any claim for lost wages or loss of earning capacity" and the "basis of any such claim including copies of tax returns, 1099's, K-1's or W-2's" and that "no information has been provided [in response to this request] other than that [Rae Miller] is unemployed but is making a claim for loss of earning capacity." (*Id.* at PageID# 117.)

"'Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.'" *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998) (quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)); *see also Tefft v. Seward*, 689 F.2d 637, 639 n.2 (6th Cir. 1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading."). In determining prejudice, courts consider whether allowing the amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute[.]" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Here, the Millers moved to amend their causes of action and damages before the jointly proposed deadline for motions to amend pleadings set by the initial case management order and well before the deadline for completing discovery. Kroger and PepsiCo state that they have already requested discovery relevant to the Millers' proposed amended damages claims. (Doc. No. 13.) And "[a]ny prejudice that might result from the need to take additional discovery generated by the new allegations may be addressed by amendments to the case management order." *B.A.P. v. Overton Cnty. Bd. of Educ.*, Case No. 2:20-cv-00065, 2021 WL 6496873, at *3 (M.D. Tenn. Oct. 5, 2021).

Kroger and PepsiCo therefore have not shown the kind of undue delay or prejudice that would warrant denying the Millers leave to amend their asserted causes of action and damages.

Because Kroger and PepsiCo only argue that the Millers' proposed amendments regarding damages should be denied because of undue delay or prejudice, the Millers' motion to amend will be granted as to those proposed amendments.

**B.     Futility**

Kroger and PepsiCo argue that the Millers' proposed amendments to include negligence per se causes of action are futile because they would not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). (Doc. No. 13.) Kroger and PepsiCo characterize the Millers' proposed additional causes of action as "negligence *per se* claims asserting violations of Crossville City Ordinance § 12-401, which adopts the 2018 version of the International Property Maintenance Code (IPMC), as well as Crossville City Ordinance § 7-101, which adopts the 2018 edition of the International Fire Code (IFC)." (*Id.* at PageID# 118); *see also* Crossville, Tenn., Code of Ordinances § 7-101, https://codelibrary.amlegal.com/codes/crossville/latest/crossville_tn/0-0-0-7275 ("[T]he International Fire Code, 2018 edition, including Appendix Chapters A through J as recommended by the International Code Council, is hereby adopted by reference and included as part of this code."); *id.* § 12-401 ("[T]he International Property Maintenance Code, 2018 edition, including Appendix Chapter A, as prepared and adopted by the International Code Council, is hereby adopted and incorporated by reference as a part of this code . . . .").

"Negligence *per se* is the doctrine that violation of a statute in itself establishes negligence." *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 702 (M.D. Tenn. 2018) (Crenshaw, C.J.). To succeed on a negligence per se claim under Tennessee law, a plaintiff must allege and prove three elements: (1) "'the defendant must have violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public'"; (2) "'the injured party must be within

5

the class of persons intended to benefit from or be protected by the statute'"; and (3) "'the injured party must show that the negligence was the proximate cause of the injury.'" *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 734 (Tenn. Ct. App. 2019) (quoting *Harden v. Danek Med., Inc.*, 985 S.W.2d 449, 452 (Tenn. Ct. App. 1998)). Tennessee courts recognize, however, that "'[n]ot every statutory violation amounts to negligence per se.'" *Whaley v. Perkins*, 197 S.W.3d 665, 673 (Tenn. 2006) (quoting *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003)). "'The two threshold questions in every negligence per se case are whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type that the statute was designed to prevent.'" *Id.* (quoting *Rains*, 124 S.W.3d at 591). Further, "'[t]o trigger the doctrine, the statute must establish a specific standard of conduct.'" *Shaw*, 596 S.W.3d at 734 (quoting *Rains*, 124 S.W.3d at 590).

The Millers' proposed amended complaint asserts negligence per se claims based on sections of the IFC and IPMC that address means of egress. (Doc. No. 12-1.) Specifically, the Millers rely on IFC §§ 1031.1 and 1031.2, which provide:

> **1031.1 General.** The *means of egress* for buildings or portions thereof shall be maintained in accordance with this section.
>
> **1031.2 Reliability.** Required *exit accesses*, *exits* and *exit discharges* shall be continuously maintained free from obstructions or impediments to full instant use in the case of fire or other emergency where the building area served by the *means of egress* is occupied. An *exit* or *exit passageway* shall not be used for any purpose that interferes with a *means of egress*.

Int'l Fire Code §§ 1031.1, 1031.2 (2018). The Millers also rely on IFC § 1018, which sets requirements for "[a]isles and *aisle accessways* serving as a portion of the *exit access* in the *means of egress* system . . . [,]" including setting "the minimum clear *aisle* width" for categories of buildings and structures that include markets. *Id.* §§ 1018.1, 1018.3; *see also id.* § 202 (defining

"Mercantile Group M" to include "[m]arkets" and "[r]etail or wholesale stores"). Finally, the Millers rely on IMPC §§ 702.1 and 702.2, which provide:

> **702.1 General.** A safe, continuous and unobstructed path of travel shall be provided from any point in a building or structure to the *public way*. Means of egress shall comply with the *International Fire Code*.
>
> **702.2 Aisles.** The required width of aisles in accordance with the *International Fire Code* shall be unobstructed.

Int'l Prop. Maint. Code §§ 702.1, 702.2 (2018).

### 1. PepsiCo

PepsiCo argues that the Millers' negligence per se claims against it are futile because the IFC and IPMC only apply to property owners, operators, and occupants, and the Millers have not alleged that PepsiCo owns, operates, or occupies the Kroger store where Rae Miller's injury occurred. (Doc. No. 13.)

Crossville's city ordinances provide that "[i]t shall be unlawful for any person to violate . . . the International Fire Code herein adopted, or fail to comply therewith[.]" Crossville, Tenn., Code of Ordinances § 7-106. The IFC provides that "[c]orrection and abatement of violations of this code shall be the responsibility of the *owner* or the owner's authorized agent" and that, "[w]here an occupant creates, or allows to be created, hazardous conditions in violation of this code, the occupant shall be held responsible for the abatement of such hazardous conditions." Int'l Fire Code § 110.2. The IFC defines an "owner" as:

> Any person, agent, operator, entity, firm or corporation having any legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding an interest or title to the property; or otherwise having possession or control of the property, including the guardian of the estate of any such person, and the executor or administrator of the estate of such person if ordered to take possession of real property by a court.

*Id.* § 202. The IFC defines an "agent" as:

> A person who shall have charge, care or control of any structure as *owner*, or agent of the *owner*, or as executor, executrix, administrator, administratrix, trustee or guardian of the estate of the *owner*. Any such person representing the actual *owner* shall be bound to comply with the provisions of this code to the same extent as if that person was the *owner*.

*Id.* The IFC does not define "occupant."

Crossville's ordinances also provide that "[i]t shall be unlawful for any person to violate or fail to comply with any provision of the International Property Maintenance Code[.]" Crossville, Tenn., Code of Ordinances § 12-404. The IPMC states that "[t]he provisions of this code shall apply to . . . the responsibility of *owners*, an owner's authorized agent, *operators* and *occupants* . . . ." Int'l Prop. Maint. Code § 101.2; *see also id.* § 701.2 (providing that "[t]he *owner* of the *premises* shall provide and maintain such fire safety facilities and equipment in compliance with these requirements" and that "[a] person shall not occupy as *owner-occupant* or permit another person to occupy any *premises* that do not comply with the requirements of this chapter"). The IPMC defines an "owner" as:

> Any person, agent, *operator*, firm or corporation having legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property, including the guardian of the estate of any such person, and the executor or administrator of the estate of such person if ordered to take possession of real property by a court.

*Id.* § 202. It defines "operator" as "[a]ny person who has charge, care or control of a structure or *premises* that is let or offered for *occupancy*." *Id.* And it defines "occupant" as "[a]ny individual living or sleeping in a building, or having possession of a space within a building." *Id.*

The Millers have not alleged any facts sufficient to support a reasonable inference that PepsiCo is an owner, operator, or occupant of the Kroger store where Rae Miller was injured as necessary for PepsiCo's conduct to violate the IFC and IPMC. The Millers' proposed amended complaint alleges only that PepsiCo, "its agents, employees, and representatives were contracted

8

with or otherwise invited to place its merchandise in the Kroger store located at 265 Highland Square, Crossville, Tennessee 38555." (Doc. No. 12-1, PageID# 110, ¶ 35.) The Millers therefore have not sufficiently alleged that PepsiCo violated the Crossville city ordinances prohibiting violations of the IFC and IPMC. The Milles' proposed negligence per se claims against PepsiCo are futile.

 2. **Kroger**

Kroger argues that the Millers' proposed negligence per se claims are futile for three reasons.

First, Kroger argues that, "because this case has nothing to do with a fire," the Millers do not belong to the class of persons that the relevant ordinances and codes were intended to protect and the Millers did not sustain the type of injuries that the relevant ordinances and codes were designed to prevent. (Doc. No. 13, PageID# 121 (citing *Whaley*, 197 S.W.3d at 673).)

Crossville adopted the IFC "for the purpose of providing a reasonable level of life safety and property protection from the hazards of fire, explosion or dangerous conditions in new and existing buildings, structures and premises, and to provide safety to firefighters and emergency responders during emergency operations[.]"[1] Crossville, Tenn., Code of Ordinances § 7-101. Crossville adopted the IPMC "for the purpose of providing minimum requirements and standards

---

[1] The IFC similarly provides that:

> The purpose of this code is to establish the minimum requirements consistent with nationally recognized good practice for providing a reasonable level of life safety and property protection from the hazards of fire, explosion or dangerous conditions in new and existing buildings, structures and premises, and to provide a reasonable level of safety to fire fighters and emergency responders during emergency operations.

Int'l Fire Code § 101.3.

for premises, structures, equipment and facilities for light, ventilation, space, heating, sanitation, protection from the elements, life safety, safety from fire and other hazards, and for safe and sanitary maintenance[.]"[2] *Id.* § 12-401.

The Millers argue generally that "[t]he combined effect and intent of these ordinances and rules is to require a safe, continuous and unobstructed path of travel for the public and patrons and to ensure that the aisles are unobstructed." (Doc. No. 12, PageID# 102–03.) But the Millers have not identified any basis to support a finding that they belong to the class of persons that Crossville's ordinances adopting the IFC and IPMC were designed to protect or that the Millers' alleged injuries are of the type that the ordinances were designed to prevent. *See Elliot v. Food Lion, LLC*, Civ. Action No. 1:12-cv-1426, 2014 WL 1404562, at *2 (E.D. Va. Apr. 10, 2014) (finding proposed amended negligence per se claims in grocery store slip-and-fall case futile where claims were based on purported violations of "a wide array of random building, construction, and fire codes" and plaintiff presented no argument or authority that he belonged to class of persons meant to be protected or suffered type of injury codes were intended to protect against); *see also HomeTrust Bank v. Craine, Thompson & Jones, PC*, No. 3:20-cv-00041, 2020 WL 12863034, at

---

[2] This language is similar to language in IMPC § 101.2, which defines the IMPC's scope:

> The provisions of this code shall apply to all existing residential and nonresidential structures and all existing premises and constitute minimum requirements and standards for premises, structures, equipment and facilities for light, ventilation, space, heating, sanitation, protection from the elements, a reasonable level of safety from fire and other hazards, and for a reasonable level of sanitary maintenance . . . .

Int'l Prop. Maint. Code § 101.2. The IPMC states that its "expressed intent . . . is to ensure public health, safety and welfare insofar as they are affected by the continued *occupancy* and maintenance of structures and *premises*." *Id.* § 101.3.

*5 (E.D. Tenn. July 16, 2020) ("It is not enough for Plaintiff to allege generally that Defendant violated a number of statutes and, therefore, is liable for negligence per se.").

Kroger further argues that the Millers' proposed negligence per se claims based on IPMC §§ 702.1 and 702.2 and IFC § 1031.1 are futile because these sections do not articulate specific standards of care.[3] (Doc. No. 13.) Kroger argues that IPMC §§ 702.1 and 702.2 "do not set forth any specific standard of care except to reference back to the International Fire Code" and therefore "do not supply a basis for a negligence *per se* claim by their own terms." (Doc. No. 13, PageID# 124.) Sections 702.1 and 702.2 provide that:

> **702.1 General.** A safe, continuous and unobstructed path of travel shall be provided from any point in a building or structure to the *public way*. Means of egress shall comply with the *International Fire Code*.
>
> **702.2 Aisles.** The required width of aisles in accordance with the *International Fire Code* shall be unobstructed.

Int'l Prop. Maint. Code §§ 702.1, 702.2. Kroger also argues that IFC § 1031.1 "only references subsequent provisions of the IFC and does not provide any independent standard of care by its own terms." (Doc. No. 13, PageID# 124); *see also* Int'l Fire Code § 1031.1 ("The *means of egress* for buildings or portions thereof shall be maintained in accordance with this section.").

Kroger is correct that general language requiring compliance with another code provision or statute is not sufficient to establish a specific standard of care for purposes of negligence per se claims. *See, e.g.*, *Weaver v. Cox Transp. Servs., Inc.*, Case Nos. 2:23-cv-02596, 2:23-cv-02348, 2025 WL 368569, at *3 (W.D. Tenn. Jan. 29, 2025) (dismissing negligence per se claim because statute did not "set[ ] forth any specific standard of care" where statute required drivers "to comply with Tennessee's traffics law"). IPMC § 702.1 does include language requiring provision of "[a]

---

[3] Kroger has not argued that IFC §§ 1018 and 1031.2 lack specific standards of care.

safe, continuous and unobstructed path of travel . . . [,]" but this broad language is not sufficient to establish a specific standard of care for purposes of a negligence per se claim. In *Freshley v. Yale Realty Services Corp.*, NO. 3:20-cv-01015, 2023 WL 6628602, at *3 (M.D. Tenn. Oct. 11, 2023), the court addressed a negligence per se claim based on a provision of the 2018 IPMC "that requires 'sidewalks, walkways, driveways, parking spaces and similar areas to be kept in a proper state of repair and maintained free from recognized hazardous conditions.'" The court found that this language "[a]t best . . . offer[ed] general guidance in non-specific terms" and therefore did not include "a specific standard of care" sufficient to support a claim of negligence per se. *Id.* Like the language at issue in *Freshley*, the terms "safe, continuous and unobstructed path of travel" offer general guidance in non-specific terms and therefore cannot support a negligence per se claim. *See id.*; *see also Shaw*, 596 S.W. 3d at 734–35 (agreeing "with the trial court's conclusion" that "'general guidance'" "'posed in non-specific terms[ ]'" "cannot trigger the negligence *per se* doctrine").

Third, Kroger argues that the Millers' proposed negligence per se claims fail because the proposed amended complaint alleges that Rae Miller fell "in an interior aisle of a grocery store that does not qualify as part of the 'means of egress'" governed by the cited IFC and IPMC provisions. (Doc. No. 13, PageID# 119.) The IFC defines a "means of egress" as:

> A continuous and unobstructed path of vertical and horizontal egress travel from any occupied portion of a building or structure to a *public way*. A means of egress consists of three separate and distinct parts: the *exit access*, the *exit* and the *exit discharge*.

Int'l Fire Code § 202. A "public way" is:

> A street, alley or other parcel of land open to the outside air leading to a street, that has been deeded, dedicated or otherwise permanently appropriated to the public for public use and which has a clear width and height of not less than 10 feet (3048 mm).

12
Case 2:24-cv-00060     Document 14     Filed 05/27/25     Page 12 of 14 PageID #: 140

*Id.* "Exit Access" means "[t]hat portion of a *means of egress* system that leads from any occupied portion of a building or structure to an *exit*." *Id.* An "exit" is:

> That portion of a *means of egress* system between the *exit access* and the *exit discharge* or *public way*. Exit components include exterior exit doors at the *level of exit discharge*, *interior exit stairways* and *ramps*, *exit passageways*, *exterior exit stairways* and *ramps* and *horizontal exits*.

*Id.* Kroger recites these definitions in its response in opposition to the Millers' motion to amend (Doc. No. 13), but Kroger has not provided a basis on which to find that the aisle where Rae Miller fell and sustained injuries was not an "exit access" "lead[ing] from an[ ] occupied portion of [the] building . . . to an exit." Int'l Fire Code § 202 (emphasis omitted).

However, because the Millers have not sufficiently alleged that they belong to the class of persons that Crossville's city ordinances adopting the IFC and IPMC were designed to protect and that they suffered the type of injuries these ordinances were intended to prevent, and because the majority of the IFC and IMPC provisions the Millers cite do not include specific standards of care, Kroger has shown that the Millers' proposed amended negligence per se claims against it are futile.

Accordingly, the Court will deny leave to amend with respect to the Millers' proposed negligence per se claims against Kroger and PepsiCo. However, the Court will allow the Millers' proposed amendments to drop the related entity defendants and modify the Millers' claims for damages.

IV.     **Conclusion**

For these reasons, the Millers' motion for leave to amend their complaint (Doc. No. 12) is GRANTED IN PART AND DENIED IN PART. The Millers' request for leave to delete references to the related entity defendants and to amend the Millers' requests for damages are granted. The Millers' request for leave to amend their causes of action to include negligence per se claims is denied.

The Millers are ORDERED to file an amended complaint that complies with this Memorandum Order by June 10, 2025.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge